**FIRST DIVISION**
**DOYLE, C. J.,**
**PHIPPS, P. J., and BOGGS, J.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**July 1, 2015**

# In the Court of Appeals of Georgia

A15A0275. MINCEY v. THE STATE.

PHIPPS, Presiding Judge.

Gary Mincey appeals from his convictions for rape (three counts), armed robbery (three counts), aggravated sexual battery, aggravated sodomy, aggravated assault (two counts), false imprisonment (five counts), robbery by force, and burglary, in connection with offenses committed against five women; one of the rape convictions and the aggravated sexual battery conviction (along with other convictions) involved offenses committed against H. W. Mincey contends that the trial court erred by denying his motion to suppress DNA evidence[1] obtained from him

---

[1] "DNA (deoxyribonucleic acid) is an organic substance found in the chromosomes in the nucleus of a cell. It provides the genetic code which determines a person's characteristics." _Caldwell v. State_, 260 Ga. 278, 279 (1), n. 1 (393 SE2d 436) (1990).

pursuant to a search warrant, because the affidavit submitted in support of the warrant was insufficient.[2] Finding no error, we affirm.

Mincey asserts that the magistrate lacked probable cause to issue the search warrant to obtain a sample of his saliva because the incident described in the affidavit (which incident involved H. W.) submitted in support of the warrant did not show a fair probability that law enforcement officials had obtained any biological evidence from H. W. to which his DNA sample could be compared.[3]

"In determining probable cause, the magistrate's task is to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."[4]

---

[2] As discussed more, infra, the search warrant affidavit set out allegations involving the crimes committed against H. W. (only), and stated that Mincey's DNA sample would be "compared to [H. W.'s] rape kit."

[3] See OCGA § 17-5-30 (a) (2), providing that a defendant may move to suppress items obtained with a search warrant on the ground that the warrant was illegal because there was not probable cause for its issuance.

[4] *Couch v. State*, 326 Ga. App. 207, 208 (2) (756 SE2d 291) (2014) (citations and punctuation omitted), citing *State v. Palmer*, 285 Ga 75, 77 (673 SE2d 237) (2009).

2

The appellate court's duty is to determine if there was a substantial basis for concluding that probable cause existed to issue the search warrant. Doubtful cases should be resolved in favor of upholding the determination that issuance of a warrant was proper, reflecting both a desire to encourage use of the warrant process by police officers and a recognition that once a warrant has been obtained, intrusion upon interests protected by the Fourth Amendment is less severe than otherwise may be the case.[5]

The evidence is construed most favorably to uphold the findings and judgment of the trial court; the trial court's findings as to disputed facts and credibility will be upheld unless clearly erroneous; and the trial court's application of the law to undisputed facts is subject to de novo review.[6] We afford substantial deference to a magistrate's decision to issue a search warrant based upon a finding of probable cause.[7]

Construed most favorably to uphold the findings and judgment of the trial court, the evidence shows that on November 29, 2011, H. W. was at home when a man entered her house, robbed her at gunpoint of various items, and forced her to

---

[5] *Glenn v. State*, 288 Ga. 462, 466 (2) (d) (704 SE2d 794) (2010) (citations and punctuation omitted).

[6] *Palmer*, supra at 78.

[7] Id.

have sexual intercourse with him. The assailant then ordered H. W. to take a shower, which she did, and he left. H. W. also left the house, contacted and gave a statement to police, then went to a hospital, where a sexual assault kit was completed.

On November 30, 2011, police officers attempted to initiate a stop of a vehicle they suspected was connected to a series of reported rapes. After an ensuing vehicle chase and foot chase, officers apprehended the driver, Mincey, in a retention pond. Officers found in the pond, near Mincey, a striped pillowcase he had been carrying. The pillowcase and some of its contents had been taken from H. W.'s house during the robbery the day before. Mincey was taken into custody at that time.

On December 1, 2011, a law enforcement officer filed an affidavit and application for a search warrant, in which he sought to obtain from Mincey a sample of saliva for use in DNA analysis.[8] The affidavit pertinently alleged the following:

> On 11-29-11, [Officer Q. L.] responded to . . . [a] Rape and Armed Robbery call. . . .Upon [his] arrival, he spoke with the victim [H. W.]. . . . The victim stated she had just been robbed and raped at her home. . . .The victim stated the suspect attempted to place his penis in her vagina. The suspect then told the victim to finger her self. The victim stated the suspect attempted to penetrate her again. The victim stated the

---

[8] For a detailed discussion of DNA analysis and the use of DNA evidence at trial, see *Caldwell*, supra at 278-290 (1).

suspect continued about thirty seconds trying to get his penis into her vagina. . . . The victim stated she does not know . . . why he could not penetrate her. The victim stated the suspect wiped her inner thighs off with an unknown cloth and told her to take a shower. . .When the victim was in the shower the suspect told her to wash her body with some soap. The victim stated she was unable to find the soap, so she used hair shampoo. . . .The victim stated she stayed in the shower for approximately ten minutes before she exited the bathroom and went next door. . . to call for help.

On 11-30-11, the victim's rape kit was taken to the G. B. I. Crime Lab for serology testing. This search warrant is being requested to obtain the defendant's Buccal Cells for DNA analysis. It will be compared to the victim's rape kit that was taken to the G.B.I. Crime Lab.

The officer averred in the affidavit that there was probable cause to believe that Mincey had committed the rape, that the item to be searched or seized constituted evidence of that crime, and that the item to be searched was a saliva sample from Mincey (obtained by swabbing the inside of his mouth). The magistrate found probable cause and issued the search warrant.

Mincey contends that the search warrant was not based on probable cause because law enforcement officers had sought the sample of his DNA for the purpose of comparing it to evidence obtained from H. W., but nothing in the affidavit

provided a fair probability that officers had obtained a sample from H. W. which could be compared to his DNA sample. He asserts that the affidavit showed that there had been no vaginal penetration; that after the assault the assailant had wiped H. W.'s inner thighs with an "unknown" cloth and H. W. had taken a shower; and that, when the affidavit was made, there had been no showing that any seminal fluid was present in the samples taken from H. W.

However, as set out above, the affidavit included averments that H. W.'s assailant had attempted vaginal penetration repeatedly, and that a rape kit had been completed soon after the assault.

> By no means is probable cause to be equated with proof by even so much as a preponderance of evidence. . . .Probable cause does not demand the certainty we associate with formal trials. Taking a common sense approach to evaluating the affidavit, we conclude that . . . there . . . is sufficient evidence to find probable cause for issuance of the search warrant.[9]

Affording the proper deference to the magistrate's decision,[10] we hold that there was a substantial basis for concluding that probable cause existed for the

---

[9] *Brown v. State*, 292 Ga. App. 269, 276 (2) (663 SE2d 749) (2008) (citations omitted).

[10] *Flewelling v. State*, 300 Ga. App. 505, 509 (2) (685 SE2d 758) (2009).

issuance of the search warrant.[11] The trial court did not err in denying the motion to suppress.[12]

*Judgment affirmed. Doyle, C. J., and Boggs, J., concur*.

---

[11] See generally *Coleman v. State*, 271 Ga. 800, 803 (4) (523 SE2d 852) (1999); *Farris v. State*, 293 Ga. App. 674, 676 (1) (667 SE2d 676) (2008).

[12] See *Couch*, supra at 209 (2).